IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | 4:13-CR-049-Y |
| | § | |
| MICHAEL M. BODIE (2) | § | |

**DEFENDANT'S MOTION FOR DOWNWARD VARIANCE**

Michael M. Bodie, by and through his undersigned counsel, hereby moves for a sentence below the advisory guidelines. In support thereof, he would respectfully show the Court the following:

Bodie submits that the appropriate sentence in this case is the mandatory minimum sentence of five-years imprisonment, followed by a lengthy and vigorous term of supervised release. In support of this request, Bodie offers three reasons. First, the statutory minimum sentence exceeds even the harshest *empirically-based* guideline estimate. Second, Bodie poses a low risk of physically harming a child. Third, the Court can draw upon rigorous alternatives to mere incarceration that will adequately address all the statutory objectives of sentencing under § 3553(a). Each of these reasons—standing alone and certainly when considered together—compel the imposition of a five-year prison sentence.

**I.   Guideline 2G2.2 is not a reliable gauge of the § 3553(a) factors, and the Court should vary below the sentencing range it recommends.**

The Court must impose a sentence "sufficient, *but not greater than necessary*" to

comply with the statutory objectives delineated in 18 U.S.C. § 3553(a)(2). *See* 18 U.S.C. § 3553(a) (emphasis added). Because the child pornography guidelines recommend sentences patently higher than what is "necessary" to fulfill the statutory mandate, the Court should vary substantially below the advisory guideline range. *United States v. Stone*, 575 F.3d 83, 97 (1st Cir. 2009) ("[W]e wish to express our view that the [child pornography] sentencing guidelines at issue are in our judgment harsher than necessary."); *United States v. Dorvee*, 616 F.3d 174, 188 (2d. Cir. 2010) (recognizing that application of child pornography guidelines "typically yields a sentence 'greater than necessary' to achieve the goals of § 3553(a).").

Post-*Booker*, this Court may vary from the Federal Sentencing Guidelines where there is "sufficiently compelling . . . justification." *See Gall v. United States* 552 U.S. 38, 50 (2007). Such compelling circumstances may arise *categorically* when the applicable sentencing guidelines for a particular offense lack empirical support. *See Spears v. United States*, 555 U.S. 261, 264 (2009) (quoting *Kimbrough v. United States*, 552 U.S. 85, 109-10 (2007)) (clarifying that *Kimbrough* authorized district courts to categorically vary from the crack-cocaine guidelines as a matter of policy because they lack empirical support). It is now well-documented that relentless Congressional meddling has stymied the Sentencing Commission's best efforts to create sound, empirically-based child pornography guidelines. *See, e.g., Dorvee*, 616 F.3d at 184; *United States v. Grober*, 624 F.3d 592, 603-09 (3rd Cir. 2010); *United States v. McNerney*, 636 F.3d 772, 775-78 (6th Cir. 2011); *United States v. Huffstatler*, 571 F.3d

620, 622-23 (7th Cir. 2009); *United States v. Henderson* 649 F.3d 955, 960-62 (9th Cir. 2011).

Courts of appeals across the country have observed that the child pornography guidelines, like the crack-cocaine guidelines, are wholly unsupported by "empirical data and national experience," and "do not exemplify the [Sentencing] Commission's exercise of its characteristic institutional role." *Dorvee,* 616 F.3d at 188. Consequently, these courts have expressly recognized that district courts may *categorically* vary below the child pornography guidelines as a matter of policy. *See id.* (concluding that district courts may categorically vary from child pornography guidelines because like the crack-cocaine guidelines, they are not empirically based); *Grober*, 624 F.3d at 608 (same); *Henderson,* 649 F.3d at 963 (same); *Stone*, 575 F.3d at 90 (same); *see also Untied States v. Pape*, 601 F.3d 743, 749 (7th Cir. 2010) (recognizing that district courts "are at liberty to reject any Guideline on policy grounds though they must act reasonably when using that power").[1]

District courts across the country have heeded the call and rightly chosen to cast these guidelines aside in favor of substantially lower sentences. *See*, *e.g., United States v. Abraham*, 2013 U.S. Dist. LEXIS 69151 (D. Neb. May 15, 2013) (downwardly

---

[1] The upsurge in criticism from federal courts stemmed in part from a revealing paper written by Troy Stabenow: *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines*, available at <http://www.fd.org/docs/child-porn-july-revision.pdf> (last accessed October 16, 2013). Canvassing the history of the child pornography guidelines, Stabenow persuasively shows that their meteoric rise in severity was "largely the consequence of numerous morality earmarks, slipped into larger bills . . ., often without notice, debate, or empirical study of any kind." *See* Stabenow at 3.

varying from guideline range of 210-240 months to six years imprisonment); *United States v. Stern*, 590 F. Supp. 2d 945 (N.D. Ohio 2008); *United States v. Johnson*, 588 F. Supp. 2d 997 (S.D. Iowa 2008); *United States v. Baird*, 580 F. Supp. 2d 889 (D. Neb. 2008); *United States v. Hanson,* 561 F. Supp. 2d 1004 (E.D. Wis. 2008); *United States v. Diaz*, 720 F. Supp. 2d 1039 (E.D. Wis. 2010); *United States v. Riley*, 655 F. Supp. 2d 1298 (S.D. Fla. 2009); *United States v. McElheney,* 630 F. Supp. 2d 886 (E.D. Tenn. 2009); *United States v. Beiermann*, 599 F. Supp. 2d 1087 (N.D. Iowa 2009); *United States v. Phinney*, 599 F. Supp. 2d 1037 (E. D. Wis. 2009).  Recent statistics confirm this trend: in 2012, 62.2% of all child-pornography defendants received below-Guidelines sentences.  *See* 2012 Sourcebook of Federal Sentencing Statistics, (17th ed.),Table 27A, <http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and_ Sourcebooks/2012/Table 27a.pdf> (last accessed October 16, 2013).  In sharp contrast, only 2.6% of all child-pornography defendants received above-Guidelines sentences. *See* Table 27, <http://www.ussc.gov/Research_and_Statistics/Annual_Reports_and Sourcebooks/2012/Table27.pdf> (last accessed October 16, 2013).

      It should come as no surprise that the child pornography guidelines are so off-kilter, so divorced from what judges across the country regard as fair.  The Sentencing Commission typically develops guidelines by "using an empirical approach based on data about past sentencing practices."  *Dorvee,* 616 F.3d at 184 (citing *Rita v. United States*, 551 U.S. 338, 349 (2007)).  Indeed, it is the Commission's *very use* of an empirical approach that supplies the premise behind according deference to the Guidelines.  *See Rita,* 551 U.S. at 348-50.  Essentially the Guidelines were designed

as a mere vehicle to deliver the Commission's empirically-based sentencing recommendations. The Guidelines in and of themselves carry no talismanic significance; they are only meaningful because they purportedly embed empirical data and past sentencing practices within them. It is for this reason alone that the guideline-calculation process is thought to yield sentencing recommendations which, "at wholesale," are "not greater than necessary" to comply with § 3553(a). *Rita,* 551 U.S. at 348.

But guidelines unhinged from the empirical data and the Commission's systematic method amount to little more than a series of peculiar mathematical computations "cloak[ed] . . . in the neutral colors of judicial action." *Mistretta v. United States*, 488 U.S. 361, 408 (1989). Guideline 2G2.2 has become so corrupted that it no longer provides a meaningful "wholesale" appraisal of the § 3553(a) factors. "Rather than carefully differentiating between offenders based on their culpability and dangerousness, § 2G2.2 consists of a hodgepodge of outdated enhancements that apply in every case." *Abraham*, 2013 U.S. Dist. LEXIS 69151 at *12 (citing *Dorvee*, 616 F.3d at 186.) As one district judge succinctly put it: "§ 2G2.2 simply does not work." *Id.* (citing cases).

The farce that is § 2G2.2. is best illustrated by comparing the Guidelines' treatment of Bodie with its treatment of offenders committing undeniably more serious crimes. Assume Bodie lived in a federal territorial jurisdiction. Had Bodie robbed a convenience store at gunpoint, discharged a firearm, caused serious bodily injury to another customer, and abducted the clerk to aid in his escape, he'd be looking at a

guideline range of 97-121 months—roughly the same as (but still less than) Bodie's present guideline range of 108-135 months. *See* USSG § 2B31(a); (b)(2); (b)(3)(B); (b)(4). Had Bodie driven drunk and killed a child, with acceptance he'd be facing a guideline range of 30-37 months for involuntary manslaughter. *See* USSG § 2A1.4; Sentencing Table.

The disparities also exist when comparing Bodie's crime to contact sex offenses. If Bodie had committed statutory rape with a 12-year old, with acceptance he'd face an adjusted guideline range of 18-24 months. *See* USSG § 2A3.2; Sentencing Table. Had he fondled the breasts, groin, or anus of a 6-year old, he'd be facing an adjusted guideline range of 30-37 months. *See* USSG § 2A3.4(b)(1); Sentencing Table; 18 U.S.C. § 2244; § 2246(3). Had Bodie forcibly raped a grown adult, absent other aggravating circumstances his adjusted guideline range would be 70-87 months. *See* USSG § 2A3.1(a)(2); Sentencing Table. If the rape victim sustained serious bodily injury, the guideline range would be 87-108 months—still less than Bodie's current guideline range. *See* USSG § 2A1.3(a)(2) & (b)(4); Sentencing Table.

Even the Sentencing Commission has recognized the problem. In its recent comprehensive report to Congress on § 2G2.2, the Commission concluded that "the current sentencing scheme results in overly severe guideline ranges for some offenders based on outdated and disproportionate enhancements related to their collecting behavior." *See* United States Sentencing Commission, REPORT TO CONGRESS: FEDERAL CHILD PORNOGRAPHY OFFENSES (Dec. 2012) at 321, available at <http://www.usssc.gov./Legislative_and_Public_Affairs/Congressional_Testimony_a

nd_Reports/Sex_Offense_Topics/201212_Federal_Child_Pornography_Offenses/Full_Report_to_Congress.pdf> (last accessed October 16, 2013). Enhancements for possessing images of prepubescent minors, use of a computer, and number of images apply in over 95% of all § 2G2.2 cases, and the enhancement for possessing material portraying sadomasochistic conduct applied in 74% of all § 2G2.2 cases. Comm'n Rep. at 209. As a consequence, the Commission has requested that Congress "provide the Commission with authority to revise the entire guideline structure." *Id.* at 322.

 Simply put: the current offering in § 2G2.2 is not worth the paper it is printed on and the Court should categorically disregard the bogus ranges it recommends. *See Dorvee*, 616 F.3d at 188; *Grober*, 624 F.3d at 609; *Henderson,* 649 F.3d at 963. Guideline 2G2.2 patently fails to carry out "at wholesale" the Commission's primary statutory objective to "assure the meeting of the purposes of sentencing as set forth in § 3553(a)(2)" in a manner that is "sufficient, but *not greater than necessary*." *Rita*, 551 U.S. at 348 (quoting 28 U.S.C. § 991(b)); 18 U.S.C. § 3553 (emphasis added). Guideline 2G2.2 has "little regard for the nature of [a defendant's] offense or their personal characteristics." *Abraham*, 2013 U.S. Dist. LEXIS 69151 at *16. It "simply does not work." *Id.* at *12. The Court should disregard the range it spits out.

 In its stead, the Court should consider the child pornography guideline as it existed prior to Congressional meddling. Unlike the current guideline, the prior version reflected the Commission's exercise of its institutional role and its examination of the " existing sentencing practices" at the time that the guideline was devised. *See* United States Sentencing Commission, REPORT OF THE HISTORY OF THE CHILD

PORNOGRAPHY GUIDELINE, at 10, available at <http://www.ussc.gov/Research/Research_Projects/Sex_Offenses/20091030_History_Child_Pornography_Guidelines.pdf> (last accessed May 30, 2013). *These* empirically-based guidelines deserve meaningful consideration. *See Rita*, 551 U.S. at 349.

Applying the 1988 guidelines, Bodie's total offense level would be at worst 18. This offense level, when combined with the applicable criminal history category of I, yields a guideline range of 27-33 months.[2] Under the 1990 guidelines, Bodie's total offense level would be at worst 22, which would produce a guideline range of 41-51 months.[3] Both ranges fall below the mandatory minimum sentence of five years.

## II.   Bodie poses a low risk of physically harming a child.

The mandatory minimum sentence of five years would be appropriate even if Bodie were the "mine-run case." But Bodie is not a mine-run case; a number of offender-specific characteristics militate in favor of a downward variance.

The first reason requires little elaboration. A clinical and forensic psychologist has examined Bodie and concluded that Bodie is "at low risk of recidivism." *See* (Defendant's Exhibit 1 at 13.)[4] On the Static 99 exam, Bodie scored a 1 out of 10, placing him in the low risk category. A risk score of 1 associated with only a "5% risk

---

[2]<http://www.ussc.gov/Guidelines/1988_guidelines/Manual_PDF_10/Chapter_2_E-K.pdf> (last accessed, October 16, 2013). Note: the 1988 and 1990 Guidelines provided for only a two-level reduction for acceptance of responsibility. *See* USSG § 3E1.1.

[3] <http://www.ussc.gov/Guidelines/1990_guidelines/Manual_PDF/Chapter_2_E-K.pdf> (last accessed, October 16, 2013).

[4] Defendant's Exhibit 1 was provided in a separate letter to the Court. Counsel will offer Exhibit 1 into evidence at the sentencing hearing.

of recidivism over a 10 year period post release." On the Risk Matrix-2000, Bodie scored a zero on each of the three scales used in that test, placing him in the low risk category for sexual offense recidivism, non-sexual violence, and the combined category. Only 3% of offenders with a score of 0 in the sexual offense recidivism category recidivate over a 5-year period; that number climbs only to 7% over a 15-year period. *See (id.* at 12.)

Bodie's low risk of future danger relates to several factors the Court must consider when fashioning a just sentence. *See* 18 U.S.C. § 3553(a)(1); (a)(2)(B); (a)(2)(C) (requiring the Court to consider "the history and characteristics of the defendant," "the need . . . to afford adequate deterrence to criminal conduct," and "the need . . . to protect the public from further crimes of the defendant"). His low risk of reoffending or committing a contact offense only makes the case more compelling for a sentence at the mandatory minimum.[5]

---

[5] Additionally, Bodie has a criminal history score of zero, which statistically places him the lowest category of risk of recidivism for any offender. (PSR ¶ 59); *see* United States Sentencing Commission, A COMPARISON OF THE FEDERAL SENTENCING GUIDELINES CRIMINAL HISTORY CATEGORY AND THE U.S. PAROLE COMMISSION SALIENT FACTOR SCORE, at 5 (2005)("Scoring the minimum value of zero on the CHC indicates a very low recidivism risk."), available at <http://www.ussc.gov/Research_and_Statistics/Research_Publications/2005/20050104_Recidivism_Salient_Factor_Computation.pdf> (last accessed October 16, 2013). Offenders without a single criminal history point have just over a 10% recidivism rate in the first 24 months after release. By contrast, other offenders in criminal history category I have twice the recidivism rate. *See* U.S. Sentencing Commission, RECIDIVISM AND THE FIRST OFFENDER at 13-14(May 2004) ("Th[e] zero point recidivism rate [11.7 %] is substantially lower than the recidivism rates for offenders with only one criminal history point (22.6%)"), available at <http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_First_Offender.pdf> (last accessed October 16, 2013); U.S. Sentencing Commission, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES (2004) at 7, available at

### III. There are viable alternatives to incarceration which can adequately promote the statutory objectives of sentencing.

The Court is not limited to the prison sentence itself when addressing the § 3553(a) factors; the Court can (and must) consider alternatives to further incarceration. *See* 18 U.S.C. § 3553(a)(3) (providing that the Court must consider "the kinds of sentences available"). Fortunately, due to recent statutory amendments, both the government and the Court have a panoply of powerful tools at their disposal to ensure that Bodie poses no danger to the public and complies with the law. The Court may now impose up to a lifetime term of supervised release, and Bodie can be assisted by the able services provided by the probation department to reintegrate an offender into society. *See* 18 U.S.C. § 3583(k).

Bodie's supervised release can be rigorous. For example, the Court may impose, as *standard* conditions of release, that Bodie's person and property be subject to warrantless searches without probable cause. *See* 18 U.S.C. § 3583(d). The Court can order Bodie to participate in treatment services, impose internet monitoring restrictions, and restrict contact with minors.

---

<http://www.ussc.gov/Research_and_Statistics/Research_Publications/2004/200405_Recidivism_Criminal_History.pdf> (last accessed October 16, 2013). The results are even more disparate when compared to offenders with two or more criminal history points: zero point offenders are more than three times less likely to recidivate than defendants with two or more points. *See* RECIDIVISM AND FIRST OFFENDER at 14.

Of course, as previously discussed, for sex offenders diagnosed as "low risk," the statistics are even lower. Only 5% of offenders who classify as low risk on the Static-99 exam recidivate over a ten-year period post-release; only 7% of offenders who classify as low risk on the Risk Matrix-2000 will recidivate over a 15-year period. *See* (Exhibit 1 at 12.)

As a last resort, the government has an even more powerful tool in its arsenal to ensure the safety of the public. If overwhelming evidence demonstrates that Bodie does in fact pose an immediate physical danger to children, the government could move the Court to civilly commit him upon the expiration of his sentence,. *See* 18 U.S.C. § 4248.

### IV. The mandatory minimum sentence of five years is sufficient but not greater than necessary to satisfy the statutory objectives of sentencing.

Bodie deserves to be punished for what he did, but the punishment must be "sufficient, but not greater than necessary" to meet the statutory objectives of sentencing. 18 U.S.C. § 3553(a). The mere existence of a felony is a scourge that should not be underestimated, especially when that felony is a sex offense. Bodie will already have to serve a minimum of five-years imprisonment, followed by a rigorous term of supervised release. Bodie will likely never again have a white collar job. He will have to register as a sex offender everywhere he goes, likely for the rest of his life. He will never be able to vote, hold public office, serve on a jury, or possess a firearm. When these facts are taken together, it is clear that Bodie is already paying a deservedly heavy price for his severe transgression.

By distributing child pornography, Bodie knows he committed a serious transgression against society. And for this serious transgression, Bodie faces a stiff sentence—at least five years imprisonment and possibly a lifetime term of supervised release. A prison sentence of this length should not be discounted; it is a considerable amount of time for anyone, but particularly so for someone who has never been to

prison. *United States v. Qualls*, 373 F. Supp. 2d 873, 877 (E.D. Wis. 2005) (generally, a lesser prison term is sufficient to deter one who has not previously been subject to lengthy incarceration).

A sentence at the legislatively mandated minimum is not a comment that Bodie's case is somehow the least serious among offenders convicted of the same crime (though certainly it is less serious than many other cases). In *Kimbrough*, the Supreme Court rejected the proposition that district courts must guess at implicit Congressional directives beyond the maximums and minimums set under the law. *See Kimbrough*, 552 U.S. at 103 ("The statute says nothing about the appropriate sentences within these brackets, and we decline to read any implicit directive into that congressional silence."). While "defining crimes and fixing penalties are legislative . . . functions," *United States v. Evans*, 333 U.S. 483, 486 (1946), it is "for the *sentencing judge* to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify the crime and punishment to ensue." *Gall*, 552 U.S. at 52 (citing *Koon v United States*, 518 U.S. 81, 113 (1996) (emphasis added)).

Nor does a mandatory minimum sentence flout the will of Congress. "Guidelines are not statutes: they are advisory, not mandatory." *Abraham*, 2013 U.S. Dist. LEXIS 69151 at n.3; *United States v. Shipley*, 560 F. Supp. 2d 739, 744 (S.D. Iowa 2008). "The fact that the Guidelines conform to Congressional directives does not insulate them from a *Kimbrough* challenge." *United States v. Henderson*, 649 F.3d 955, 963 n.3 (9th Cir. 2011); *Abraham*, 2013 U.S. Dist. LEXIS 69151 at n.3. The child pornography

statute:

> provides a broad range of punishment for this crime, and if Congress does not want the courts to try and sentence individual defendants throughout that range based on the facts and circumstances of each case, then Congress should amend the statute rather than manipulate an advisory guideline and blunt the effectiveness and reliability of the work of the Sentencing Commission.

*Shipley,* 560 F. Supp. 2d at 744. Absent "such an amendment, § 3553(a) is the more authoritative expression of Congressional policy." *Abraham*, 2013 U.S. Dist. LEXIS 69151 at 963 n.3.

Nor would such a variance flout the will of the Sentencing Commission. The Commission itself has publicly acknowledged that the "current sentencing scheme results in overly severe guideline ranges for some offenders" and has specifically requested that Congress grant it the authority to "revise the entire guideline structure." Comm'n Rep. at 209. The Sentencing Commission itself wants a complete overhaul to this broken guideline. Until that day comes, it is incumbent on the Court to redress the injustice of the current guideline in its sentencing discretion under § 3553(a).

The five-year sentence required by law more than accounts for the harm Bodie caused the victims and society by downloading child pornography and emailing it to another person. The Court should impose the mandatory minimum sentence of five-years imprisonment, followed by a rigorous term of supervised release.

Respectfully submitted,

JASON D. HAWKINS
Federal Public Defender
Northern District of Texas

/s/ William R. Biggs
WILLIAM R. BIGGS
Assistant Federal Public Defender
TX State Bar No. 24052832
819 Taylor Street, Room 9A10
Fort Worth, TX 76102-4612
817.978.2753 (t)
817.978-2757 (f)
William_Biggs@fd.org

Attorney for Michael M. Bodie

**CERTIFICATE OF SERVICE**

    I, WILLIAM R. BIGGS, hereby certify that on October 16, 2013, I electronically filed the foregoing document with the clerk for th U.S. District Court, Northern District of Texas, using the electronic filing system for the court. The electronic case filing system sent a "Notice of Electronic Filing" to AISHA SALEEM, Assistant United States Attorney and to COLLEEN HAMMONS, United States Probation Officer, who presumably has consented in writing to accept this Notice as service of this document by electronic means.

/s/ William R. Biggs
WILLIAM R. BIGGS
Assistant Federal Public Defender